UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| BYRAM HEALTHCARE CENTERS, INC. | CIVIL ACTION |
|---|---|
| VERSUS | NO: 16-16854 |
| CHRISTI RAUTH | SECTION: "J"(3) |

## ORDER AND REASONS

Before the Court is a *Motion to Dismiss Defendant's Counterclaim* **(Rec. Doc. 31)** filed by Plaintiff, Byram Healthcare Centers, Inc. ("Byram"), an opposition thereto (Rec. Doc. 32) filed by Defendant, Christi Rauth ("Rauth"), and a reply (Rec. Doc. 35) filed by Byram. Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motion should be **DENIED**.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

Byram is a company that sells medical products in the area of urology, incontinence, diabetes, and ostomy. Rauth began working for Byram in October 2013. Around that time, the parties entered into a Confidentiality/HIPAA Agreement ("confidentiality agreement") whereby Rauth agreed not to disclose any confidential information to any third parties. (Rec. Doc. 31 at 2.) During the course of her employment, Rauth was promoted to Product Manager for Urology and Incontinence, where she was responsible for short

1

and long-term strategic marketing of these products. On November 21, 2016, Rauth informed Byram that she had accepted employment with a company called United Seating and Mobility, LLC d/b/a Numotion ("Numotion"), which competes directly with Byram in the field of urology and incontinence medical supplies. This litigation arises from circumstances surrounding Rauth's transition from Byram to Numotion.

Rauth's last day of employment at Byram was December 2, 2016. Rauth alleges that she intended to begin working at Numotion on December 12, 2016. However, Byram filed suit against Rauth in this Court on December 5, 2016, alleging that she misappropriated certain confidential information belonging to Byram in preparation for her employment with Numotion. Byram alleges that between August and September of 2016, Rauth sent twenty-four emails containing confidential or trade secret information to her personal email account for her use after she left Byram. (Rec. Doc. 1 at 4-9.) Byram further alleges that Rauth's actions breached the terms of the confidentiality agreement. *Id*. at 14. Along with its verified complaint for injunctive relief and damages, Byram also filed a motion for a temporary restraining order requesting, among other things, that Rauth be enjoined from working at Numotion until it could be determined whether Rauth had disclosed any confidential information. (Rec. Doc. 2 at 4.)

Before the Court ruled on the motion for a temporary restraining order, the parties filed a motion for a joint stipulated order on December 13, 2016, which the Court granted the next day. (Rec. Docs. 17, 18.) The joint stipulated order withdrew Byram's request to preclude Rauth from working at Numotion. (Rec. Doc. 18 at 2.)

On February 7, 2017, Rauth filed a counterclaim. Rauth alleges that Byram violated the Louisiana Unfair Trade Practices Act ("LUTPA") by requesting a temporary restraining order enjoining Rauth from working at Numotion and that it breached the confidentiality agreement in bad faith.

Byram filed the instant motion to dismiss Rauth's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) on March 21, 2017. This motion is now before the Court on the briefs and without oral argument.

## **LEGAL STANDARD**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

## DISCUSSION

### I. LUTPA Claim

The Louisiana Unfair Trade Practices Act, La. Rev. Stat. § 51:1405 *et seq.*, ("LUTPA") prohibits "[u]nfair methods of

competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405. Rauth alleges that Byram violated the LUTPA by filing a motion for a temporary restraining order requesting the Court to prevent her from working at Numotion without any legitimate grounds or basis for doing so. Rauth alleges that she never violated the confidentiality agreement and that Byram had no evidence suggesting that she did. Rauth takes particular issue with a statement in Byram's verified complaint which alleges that Rauth had engaged in "past and continuing breaches" of the confidentiality agreement, which she alleges is not true. (*See* Rec. Doc. 1 at 14.)

Rauth admits that she forwarded Byram documents to her personal email account, but she alleges that this was done to further her work as an employee of Byram. (Rec. Doc. 25 at 10.) She avers that it was common practice for Byram employees to send company documents to their personal email addresses so they could access and print the documents when they were traveling for work. *Id*. at 11. But Rauth alleges that she never disclosed any confidential information to third parties and that she did not intend to use this material to benefit her work at Numotion.

Rauth alleges that when Byram filed a motion for temporary restraining order, it was fully aware that the confidentiality agreement authorized Rauth to send emails to her personal account

5

and that this was consistent with the practices of the company's employees. *Id*. at 12. Thus, Rauth alleges that Byram's complaint was "not well-grounded in fact" when it stated that Rauth had engaged in past and continuing breaches of the confidentiality agreement. (Rec. Doc. 25 at 12.) Rauth alleges that as a result of Byram's request for a temporary restraining order, her start date at Numotion was delayed, which in turn resulted in a loss of compensation. *Id*. at 13. Rauth also alleges that she was forced to retain counsel to defend against the motion and that she incurred significant attorneys' fees. *Id*.

Byram makes two arguments in support of its motion to dismiss. First, Byram argues that Rauth's LUTPA claim is barred by the *Noerr-Pennington* Doctrine. Second, Byram argues that Rauth has not adequately pled a LUTPA claim. Each is discussed in turn.

### A. *Noerr-Pennington* Doctrine

The *Noerr-Pennington* doctrine has developed from two Supreme Court cases: *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961), and *United Mine Workers of America v. Pennington,* 381 U.S. 657 (1965). Under the *Noerr-Pennington* doctrine, a party who petitions the government for redress is generally afforded immunity from antitrust liability. *Bryant v. Military Dep't of Mississippi*, 597 F.3d 678, 690 (5th Cir. 2010) "The essence of the doctrine is that parties who petition the government for governmental action favorable to them

cannot be prosecuted under the antitrust laws even though their petitions are motivated by anticompetitive intent." *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988). Neither party disputes that the *Noerr-Pennington* doctrine applies to defendants who are alleged to have violated the LUTPA. *See Bayou Fleet, Inc. v. Alexander*, 68 F. Supp. 2d 734, 744 (E.D. La. 1999), *aff'd,* 234 F.3d 852 (5th Cir. 2000) (finding that "defendants have no liability under . . . the LUTPA because they are protected by the *Noerr–Pennington* doctrine").

However, the doctrine's immunity does not extend to petitioning activity that qualifies as a "sham." *Bryant*, 597 F.3d at 690. Determining whether litigation is a sham requires the court to distinguish between objectively reasonable claims and those claims that "'lead[] the factfinder to conclude that the administrative and judicial processes have been abused.'" *Id*. (quoting *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972). Courts employ a two-part test articulated by the Supreme Court in *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.* to determine whether litigation is a sham. 508 U.S. 49, 60 (1993). The first step is to determine if the action is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id*. If the litigation is objectively meritless, then the court examines

the litigant's subjective motivation and explores "whether the baseless lawsuit conceals an attempt to interfere *directly* with the business relationships of a competitor, through the use of the governmental *process* as opposed to the *outcome*." *Id*. at 60-61 (emphasis in original) (citations omitted).

At this stage in the litigation, Rauth only needs to allege facts that plausibly entitle her to relief. Her counterclaim satisfactorily alleges that the doctrine's exception for sham litigation applies. Rauth alleges that Byram's attempt to prevent her from working at Numotion was not based on evidence that she had misappropriated any confidential information. She also alleges that it was common practice for Byram's employees to email company documents to their personal email addresses, that Byram was aware of this practice, and that Byram has failed to provide any evidence that Rauth misappropriated confidential information. These facts, accepted as true, could plausibly lead to the conclusion that Byram filed its motion for a temporary restraining order with the intention of inconveniencing Rauth, preventing her from working at Numotion, and forcing her to expend time and money opposing baseless claims. In sum, Rauth has alleged facts that would lead to the conclusion that Byram filed an objectively baseless motion in order to interfere with the business relationships of a competitor.

**B. LUTPA Claim is Adequately Pleaded**

Any person may bring an action pursuant to the LUTPA so long as she has "suffer[ed] any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice . . . ." La. Stat. Ann. § 51:1409. Courts decide whether conduct falls within the ambit of the LUTPA on a case-by-case basis. *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10), 35 So. 3d 1053, 1059. However, the plaintiff must allege that the conduct "offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.* (internal citation omitted). The conduct also must qualify as "egregious" and "involve[] elements of fraud, misrepresentation, deception, or other unethical conduct" to be sanctionable under the LUTPA. *Id.*

Acts that constitute valid use of the judicial process are not unfair trade practices. *See Glod v. Baker*, 2004-1483 (La. App. 3 Cir. 3/23/05), 899 So. 2d 642, 649, *writ denied,* 2005-1574 (La. 1/13/06), 920 So. 2d 238; *see also First Nat. Bank of Commerce v. Brown*, 525 So. 2d 672, 674 (La. Ct. App. 1988). However, use of the judicial process to intentionally harass a party may result in a LUTPA violation. *See Glod*, 899 So. 2d at 650; *Bank of New Orleans & Trust Co. v. Phillips*, 415 So. 2d 973, 975 (La. Ct. App. 1982). In fact, a Louisiana court has found that the use of a

lawsuit to remove a party's main competitor from the market "is exactly what the LUTPA seeks to prevent." *Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co.*, 2014-0323 (La. App. 4 Cir. 10/1/14), 151 So. 3d 670, *writ denied,* 2014-2241 (La. 1/9/15), 157 So. 3d 1110.

Rauth alleges that Byram's actions violated Louisiana public policy against non-compete agreements. Louisiana law disfavors noncompetition agreements between employers and employees. *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695 (La. 6/29/01), 808 So. 2d 294, 317. These agreements are generally considered to be against public policy except when they satisfy certain statutory requirements found in Louisiana Revised Statute § 23:921. *J4H, L.L.C. v. Derouen*, 2010-0319 (La. App. 1 Cir. 9/10/10), 49 So. 3d 10, 13. Rauth argues that Byram violated public policy when it relied upon the confidentiality agreement to restrain Rauth from commencing her employment with Numotion.

Byram does not argue that it satisfied the statutory requirements found in Louisiana Revised Statute § 23:921 because it avers that it did not intend to use the confidentiality agreement as a method for restraining Rauth's employment. Byram argues that the confidentiality agreement is not a facially invalid covenant not to compete. Instead, Byram argues that it simply requested the Court to delay the commencement of Rauth's employment

at Numotion until the status of the confidential material could be determined.

Although the Court agrees with Byram that the present case does not involve an invalid non-compete agreement, Louisiana does have a public policy disfavoring the restraining of employees from working at the job of their choice. *See Acadian Cypress & Hardwood Inc. v. Stewart*, 2012-1425 (La. App. 1 Cir. 3/22/13), 121 So. 3d 667, 669 n.1 (noting Louisiana's "underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden" and "the fundamental right of individuals to seek success in our free-enterprise society"). Rauth has alleged facts that lead to the conclusion that Byram violated her ability to seek employment in the free market by preventing her from working at Numotion without any other legitimate justification. Therefore, she has satisfied the requirement of alleging that Byram's actions offended public policy.

Rauth has also adequately pled the other requirements for a LUTPA claim. She alleges that Byram's conduct qualifies as immoral, unethical, oppressive, unscrupulous, or substantially injurious for much the same reasons as have been described above. *See Cheramie Servs., Inc.*, 35 So. 3d at 1060. The allegation that Byram requested the temporary restraining order despite being aware that there was no evidence that Rauth had violated the

confidentiality agreement with the intent to keep her from working at Numotion satisfies this requirement. Finally, Rauth alleges that this conduct has caused her damages insofar as she was forced to retain counsel and incur significant attorneys' fees to defend against the suit. Accordingly, Byram's motion to dismiss this claim is denied.

## II. Breach of Contract Claim

In her breach of contract claim, Rauth alleges that Byram violated the confidentiality agreement. Rauth alleges that she complied with all obligations under the confidentiality agreement, but that Byram did not. In particular, Rauth alleges that the confidentiality agreement itself prevented Byram from requesting she be withheld from working at Numotion. As discussed above, the confidentiality agreement required Rauth to refrain from disclosing Rauth's confidential information to another third party. (*See* Rec. Doc. 2-2 at 1.) In exchange, the agreement stated that it was not to "be invoked to restrict [Rauth] in the exercise of [her] technical skill, provided that there is no actual or impending disclosure of its Confidential Information." *Id*. This agreement applied "both during employment with [Byram], as well as after any separation." *Id*. Thus, Rauth alleges that Byram's claim against her for an alleged breach of contract and the corresponding request to enjoin her from beginning work at Numotion is, itself, a breach of the confidentiality agreement.

12

Rauth further alleges that Byram's violation was committed in bad faith because Byram was aware that its employees sent company emails to their personal email addresses and because Byram had no evidence that Rauth had violated the confidentiality agreement.

The essential elements of a claim for breach of contract under Louisiana law are "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 2010-0986, p. 14-15 (La. App. 4 Cir. 2011), 68 So. 3d 1099, 1108-09. Here, Rauth has pleaded all of the elements. Rauth alleges that Byram undertook the obligation to refrain from inhibiting her ability to exercise her technical skill after her separation from Byram. Rauth also pleads that Byram breached this obligation by filing suit against her and claiming that she breached the contract. Finally, Rauth alleges that this violation led her to incur monetary damages.

Rauth has also adequately pleaded that Byram was in bad faith. Bad faith refers to the intentional and malicious failure to perform an obligation. La. Civ. Code art. 1997, 1984 Revision Comment (b). "The term bad faith means more than mere bad judgment or negligence; it implies the conscious doing of a wrong for dishonest or morally questionable motives." *Benton v. Clay*, 48,245 (La. App. 2 Cir. 8/7/13), 123 So. 3d 212, 219. Rauth alleges that Byram was in bad faith because it filed the instant suit and

13

request for a temporary restraining order without any evidentiary support and without first attempting to resolve this issue in a less confrontational manner. For instance, the counterclaim alleges that Byram filed this lawsuit without first contacting Rauth to discuss its concerns or sending a cease and desist letter. This allegation suggests that, at the very least, Byram engaged in morally questionable motives in filing this lawsuit and motion for temporary restraining order.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion to Dismiss* **(Rec. Doc. 31)** is **DENIED**.

New Orleans, Louisiana this 15th day of May, 2017.

*[signature]*

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE